UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZAIDA MARQUEZ,<br><br>*Plaintiff*,<br><br>v.<br><br>ILEARN SCHOOLS, INC, PASSAIC ARTS & SCIENCE CHARTER SCHOOL, ET AL.,<br><br>*Defendants*. | No. 2:25-cv-2417 (MEF)(JSA)<br><br>**OPINION and ORDER** |


II. Background
III. Analysis
B. Title VII
1. National Origin
2. Religion
3. Retaliation
C. ADA Claims
1. Disability
2. Retaliation
D. Constitutional Claims
1. First Amendment
2. Fourth Amendment
E. Other Statutory Claims
IV. Conclusion


* * *

## II. Background

A charter-school teacher[1] was fired after she raised certain concerns to administrators. See Complaint (ECF 40) at 57.

She has now sued the school,[2] along with some of her former co-workers.[3] See id. at 2-4.

From here, the teacher is called "the Plaintiff." The school and the teacher's former co-workers are "the Defendants."

In her suit, the Plaintiff presses various federal and state claims. See id. at 3-4.

For their part, the Defendants have moved to dismiss each of them, under Rule 12(b)(6). See Notice of Motion to Dismiss (ECF 42) (Defendant iLearn, Inc.); Notice of Motion to Dismiss Plaintiff's Operative Pleading (ECF 43) (Defendants Passaic Arts & Science Charter School, Hakan Kocak, Brunilda Mukollari, and Ismael Demirors).

The motions are before the Court. They are granted in part and denied in part.[4]

---

1 Zaida Marquez. See Complaint (ECF 40) at 2.

2 Passaic Arts & Science Charter School. See Complaint at 2. The Plaintiff has also sued iLearn Schools, Inc. --- which she calls the "Main Organization" overseeing Passaic Arts & Science. Id. It is not clear what the relationship between these two entities might be. But iLearn has not argued that the claims against it should be dismissed because it cannot be held liable for conduct on the part of Passaic Arts & Science, or Passaic's employees.

3 Ismail Demirors, the "Director" of Passaic Arts & Science; Hakan Kocack, the school's "IT Coordinator"; and Brunilda Mukollari, a teacher. See Complaint at 2-3.

4 The Plaintiff is not represented here by a lawyer. So her pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). But "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). And the everyday motion-to-dismiss standards apply here. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016) (describing those standards). Among other things, at this stage

## III. Analysis

### B. Title VII

The Defendants first move to dismiss the Plaintiff's Title VII[5] claims.

Title VII makes it "unlawful . . . for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). It also makes it "unlawful . . . for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made . . . unlawful . . . by [Title VII]." Id. § 2000e-3(a).

Under these provisions, people can bring claims for (i) discrimination, (ii) retaliation, and (iii) hostile work environment. See Komis v. Sec'y of U.S. Dep't of Lab., 918 F.3d 289, 292 (3d Cir. 2019), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 354-55 (2024).[6]

---

each of the Plaintiff's allegations must be taken as true by the Court. See id. at 786.

[5] Shorthand for Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 2000e et seq.

[6] "[I]ndividual employees are not liable under Title VII." Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002). So the Court construes the Plaintiff's Title VII claims as running against the school Defendants only, iLearn and Passaic Arts & Science. Not the individual, co-worker Defendants. The Plaintiff also seems to press discrimination and hostile work environment claims under the New Jersey Law Against Discrimination ("LAD"). See Complaint at 3-4, 9. But that statute does not generally allow such claims to be pressed against individuals either. See Cicchetti v. Morris Cnty. Sheriff's Off., 194 N.J. 563, 594 (2008) (noting that "individual liability . . . for acts of discrimination . . . can only arise through the [LAD's] 'aiding and abetting' mechanism") (quoting N.J. Stat. Ann. § 10:5-12(e)). So the Court also takes the Plaintiff's discrimination and hostile workplace LAD claims as directed against the Defendant-schools only. (Note that a plaintiff can assert retaliation claims against individuals under the LAD. See McDermott v. CareAllies, Inc., 503 F. Supp. 3d 225, 238 (D.N.J. 2020) (citing N.J. Stat. Ann. § 10:5-12(d)); Cortes v. Univ. of Med. & Dentistry of N.J., 391 F. Supp. 2d

Here, the complaint suggests that the Plaintiff's Title VII claims flow from alleged unlawful treatment that was based on her national origin and her religion.[7] See Complaint at 14.

Work through these now, each in turn.

**1. National Origin**

As to national origin, the Plaintiff alleges (1) that the "Defendants discriminated against [her] based on [her] . . . national origin," id., and (2) that one of the Defendants[8] "target[ed] . . . new Latino staff." Id. at 18.

The first allegation is a paraphrase of one of the elements of a Title VII claim. So it does not count. It must be put aside. See James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (stating that courts must "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" when evaluating a motion to dismiss under Rule 12(b)(6)); Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (explaining that to prevail on a discrimination claim under Title VII, a plaintiff must generally prove "that the defendant

298, 314 (D.N.J. 2005). But that wrinkle does not matter here, because the Plaintiff does not seem to aim her retaliation claims against any of the individual defendants. Some retaliation allegedly occurred. But no individual is said by the Plaintiff to have played a non-ministerial role in it. See Ross-Tiggett v. Reed Smith LLP, 2016 WL 4491633, at *8 (D.N.J. Aug. 25, 2016) (applying the rule that an "individual employee can only be found liable [for discrimination claims under the LAD] if 'actively involved in the discriminatory conduct'" to retaliation claims) (quoting Jones v. Jersey City Med. Ctr., 20 F. Supp. 2d 770, 774 (D.N.J. 1998)).

[7] The Plaintiff also alleges that the "Defendants discriminated against [her] based on [her] . . . disability or perceived disability." Complaint at 14 (citing "[a]sthma, high blood pressure, and seasonal allergies" as disabilities). But claims for disability discrimination do not work under Title VII. See 42 U.S.C. § 2000e-2(a)(1); Fleeger v. Principi, 221 F. App'x 111, 115 (3d Cir. 2007). So the Court takes the Plaintiff's disability discrimination claim as pressed under the Americans with Disabilities Act ("ADA") and analyzes the claim in Part II.B below --- along with the Plaintiff's other ADA allegations.

[8] Brunilda Mukollari.

had a discriminatory intent or motive") (internal quotation marks omitted).

The second allegation is almost entirely conclusory. It describes a bottom-line conclusion --- that there was "target[ing]" of "new Latino staff." Complaint at 18. But it does not lay out any factual allegations that provide a basis for that conclusion. Nothing, for example, as to what was said or what was done that amounted to "target[ing]." Id. And nothing as to when the alleged "target[ing]," id., took place, or where.[9]

Precise details are not required in a complaint. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016). But conclusory allegations must be set aside. See Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011); Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); James, 700 F.3d at 679. And the stand-alone allegation that a Defendant "target[ed] . . . new Latino staff," Complaint at 18, is just that --- conclusory.

The Plaintiff's Title VII national origin claim is not backed up by sufficient allegations. So it must be dismissed. See Connelly, 809 F.3d at 786; Burtch, 662 F.3d at 221; Santiago, 629 F.3d at 130; James, 700 F.3d at 679.

### 2. Religion

Move now to the Title VII religious discrimination claim.

To make out such a claim, a plaintiff must allege, among other things, that "[s]he suffered an adverse employment action," and that "the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v.

[9] To be sure, the Plaintiff has set forth allegations describing "harassment" that one of the Defendants, Brunilda Mukollari, engaged in. See Complaint at 10-17 (alleging that Mukollari entered her classroom to increase the thermostat heat, confronted the Plaintiff about the heat issue in front of students and interrupted her lesson, and yelled at a student who was in the Plaintiff's class). But the Plaintiff does not appear to allege that this behavior was connected to the Plaintiff's national origin, or that it was linked to the alleged "target[ing]" of "new Latino staff." Complaint at 18.

Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).[10]

Here, the Plaintiff alleges that the school building where she taught was rented from a church, and that the church sometimes used certain classrooms (including the Plaintiff's) after hours and on weekends for various activities. See Complaint at 7-8, 20, 28, 44. Per the Plaintiff, there were times when the church also left certain "religious materials" in her classroom, id. at 7-8, 15 (cleaned up); see also id. at 24, and religious websites were occasionally left open on her classroom's smart board. See id. 7, 31.[11]

These allegations do not plausibly establish that the Plaintiff's firing[12] took place "under circumstances that could

---

[10] The Third Circuit has explained that "[a] Title VII plaintiff [who has only circumstantial evidence of discrimination] may state a claim . . . under either the pretext theory set forth in McDonnell Douglas Corp. v. Green . . . or the mixed-motive theory set forth in Price Waterhouse v. Hopkins." Makky, 541 F.3d at 213; see also Grasty v. DaVita, Inc., 2025 WL 2388298, at *2 n.1 (3d Cir. Aug. 18, 2025) (stating the same, following amendment to Title VII). But "[u]nder either theory of discrimination, the plaintiff must establish that her protected status was a factor in the employer's challenged action." Connelly, 809 F.3d at 788. And as set forth in a moment, the Plaintiff has not done so.

[11] The Plaintiff also alleges that "specific religious practices and expectations were imposed on staff, creating an uncomfortable and discriminatory work environment" --- but no further context is provided. Complaint at 17; see also id. at 15 (stating that the "defendants discriminated against [her] based on [her] religion"); id. at 9 ("The school has promoted religious practices, violating federal law and its own employee handbook."). Like the allegations taken up in Part II.A.1, these are "conclusory statements" and "legal conclusions" --- and those cannot be considered by the Court when evaluating a motion to dismiss. James, 700 F.3d at 670.

[12] Which counts as an adverse employment action. See Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001).

give rise to an inference of intentional discrimination." Makky, 541 F.3d at 214.

The referenced allegations simply describe the background context in which the school operated. These "circumstances" do not themselves suggest that the Plaintiff was fired because of her religion, or that "intentional discrimination" was afoot. Id. And the Plaintiff does not go further. She presses no added allegations, and does not seek to explain how the dots might potentially connect up to each other.

Her Title VII religious discrimination claim must therefore be dismissed. See, e.g., Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (stating that to support a claim for employment discrimination, a claimant "must establish some causal nexus between his membership in a protected class and the [adverse action]"); Alja-Iz v. U.S. V.I. Dep't of Educ., 626 F. App'x 44, 47 (3d Cir. 2015) (affirming a motion to dismiss on similar grounds) (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009)); Bailey v. Millenium Grp. of Del., 2022 WL 3754617, at *2-3 (3d Cir. Aug. 30, 2022) (citing Sarullo and concluding similarly).

### 3. Retaliation

Although the Complaint is not crystal clear on this point, the Plaintiff also seems to press a Title VII retaliation claim based on complaints she made regarding the alleged religious discrimination. See Complaint at 4, 18. The theory --- though it is not meaningfully spelled out --- would seem to be that the Plaintiff was fired for speaking to school administrators about the things described in the preceding section, Part II.A.2.

In any event, for a retaliation theory to work, the "[plaintiff-]employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006) (emphasis added) (citing Clark Cnty. v. Breeden, 532 U.S. 268, 271 (2001)); see also Adams v. City of Newark, 747 F. Supp. 3d 721, 733 n.12 (D.N.J. 2024).

And there can be no suggestion that it would be "objectively reasonable," Moore, 461 F.3d at 341, to think that the alleged arrangements described in Part II.A.2 were illegal under Title VII.

Any Title VII retaliation claim the Plaintiff may be pressing based on her complaints of religious discrimination must therefore be dismissed.[13]

C. **ADA Claims**

Move now from Title VII to the ADA, the Americans with Disabilities Act ("ADA").[14]

The Plaintiff claims that her ADA rights were violated based on the following allegations:

- The school sets the thermostat at 75 degrees, but other teachers have sometimes raised the temperature higher. See id. at 7, 10-12, 14-15, 17-18, 22.[15] Per the Plaintiff, she complained to the school that "[t]he

---

[13] The Plaintiff's complaint also arguably suggests that she wishes to press a religion-based retaliation claim under the New Jersey LAD. See Complaint at 4, 14, 18. But in this area, Title VII and LAD claims are analyzed in the same way. See Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 906-07 (N.J. 1990); see also Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600-01 (1993). So the LAD claims fail for the same reasons the Title VII ones do.

[14] The ADA is at 42 U.S.C. § 12101 et seq. Because "there is no liability under [the ADA] for individual employees," Talley v. Clark, 2023 WL 118570, at *1 n.2 (3d Cir. Jan. 6, 2023) (citing Emerson, 296 F.3d at 189), the Court construes the Plaintiff's ADA claims as running only against the school Defendants, iLearn and Passaic Arts & Sciences. Parallel to her ADA claims, the Plaintiff also seems to press state-law disability discrimination and failure-to-accommodate claims under the New Jersey LAD. See Complaint at 3-4. Those claims are taken as running against the school Defendants as well, for reasons discussed in footnote 6. The Court also does not understand the Plaintiff to be suggesting that any of the individual Defendants might have been engaged in disability-related retaliation in violation of the LAD. Again, for the reasons laid out in footnote 6.

[15] There is no suggestion that the classroom windows were locked or sealed shut. Indeed, the Plaintiff alleges that when her classroom got hot, she opened the windows, see, e.g., Complaint at 9 --- though that allegedly caused other issues, of which more in a moment.

increased indoor heat poses a risk for students and staff with asthma, allergies, and/or high blood pressure, as heat is a known trigger that can worsen both conditions." Id. at 9, 18. And that "[o]pening windows during allergy season also introduces pollen and other airborne irritants, which can exacerbate asthma symptoms." Id.[16]

- In response to this, the Plaintiff asked to be moved to a classroom that was not connected to the HVAC and thermostat system, and/or had a portable AC unit. See id. at 23, 26. But the school pressured her into accepting a classroom that did not meet these standards. See id. at 22-24, 26-28.
- The Plaintiff also alleges that she complained about the HVAC system connected to her classroom being contaminated with bird waste, see id. at 24, 26, 29 --- and that her room had "active construction," id. at 33, resulting in water leaks, dust from exposed infrastructure, ventilation issues, mold, and asbestos. See, e.g., id. at 29, 33, 35, 37. These also contributed to her request for an accommodation, see id. at 26-27, 29, as the resulting "air quality" issues impacted her "health conditions." See id. at 29-30, 33-34.

### 1. Disability

Against the Plaintiffs' core ADA claims,[17] the Defendants argue that she is not "disabled within the meaning of the ADA." See

---

[16] The Plaintiff specifically alleges that these issues affected her "disabilit[ies]" of "[a]sthma, high blood pressure, and seasonal allergies," Complaint at 4 --- noting that she had hypertensive episodes as a result of the ongoing issues, see id. 22, that "high temperatures and inconsistent and poor air quality exacerbate her health conditions," id. at 26, and that she had submitted accommodation requests and medical information to HR, but they were ignored. See id. at 34-36, 42.

[17] This argument, if it worked, would work only against the Plaintiff's discrimination and failure-to-accommodate claims. See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751 (3d Cir. 2004) ("[A]n ADA retaliation claim . . . does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA."). And the Defendants have not made any other meaningful arguments for dismissal of these claims. See Passaic and Employee Brief at 8-9 (arguing only that "all . . . failure to accommodate [claims under the ADA or

Memorandum of Law for Motion to Dismiss Plaintiff's Operative Pleading ("iLearn's Brief") (ECF 42-1) at 6-7; Defendants, Passaic Arts and Science Charter School, Hakan Kocak, Brunilda Mukollari, and Ismael Demirors' Brief in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Passaic and Employee Brief") (ECF 43-1) at 8-9.

But this is not persuasive.

Under the ADA, a person has a "disability" if she has "a physical or mental impairment which substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).[18]

---

NJLAD] should be dismissed" based on the fact that the Plaintiff allegedly "failed to submit any type of medial documentation to the Defendant school demonstrating any potential disability" prior to September 4, 2025). Moreover, the Plaintiff also appears to have pressed identical claims under the New Jersey LAD. See Complaint at 3. But ADA claims and LAD claims based on disability largely rise and fall together. See Hutchins v. United Parcel Serv., Inc., 197 F. App'x 152, 156 (3d Cir. 2006) (retaliation claims); Guarneri v. Buckeye Pipe Line Servs. Co., 205 F. Supp. 3d 606, 614-15 (D.N.J. 2016) (discrimination claims) (citing Victor v. State, 203 N.J. 383, 410-20 (2010)); Church v. Sears Holding Corp., 605 F. App'x 119, 124 n.11 (3d Cir. 2015) (failure to accommodate claims) (citing Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 n.12 (3d Cir. 2006)). So the Court will resolve the LAD claims as it resolves the ADA ones --- denying the motions to dismiss on all of them. See also footnotes 18, 20, 22.

[18] The New Jersey LAD uses a slightly broader definition. See N.J. Stat. Ann. § 10:5-12(a) (stating that it is "an unlawful employment practice . . . [f]or an employer, because of . . . disability, . . . to discharge . . . such individual"); id. § 10:5-5(q) (defining "disability" under the LAD as any "physical or sensory . . . infirmity . . . which is caused by . . . illness"); Cook v. Gregory Press, Inc., 2016 WL 4216656, at *7 (N.J. Super. Ct. App. Div. Aug. 11, 206) ("The definition of disability under the LAD is broader than its federal counterpart, the Americans with Disability Act . . . and must be liberally construed. In contrast to the ADA, the LAD definition of disability 'does not incorporate the requirement that the alleged [] condition result in substantial limitation of a major life activity.' Similarly, the LAD does not require that the condition be serious or permanent. 'Rather, [the LAD] prohibits

And courts in this Circuit have held that allegations of asthma, without significant elaboration in the complaint, are enough to plead an ADA "disability" at the motion-to-dismiss stage.[19]

The logic: even if "not explicitly stated in [the] Plaintiff's Complaint, it can be reasonably inferred that asthma impacts the major life activity of breathing." Geronimo v. Pottsville Ford, 2021 WL 4189629, at *4 (M.D. Pa. Sept. 14, 2021); 42 U.S.C § 12102(2) (indicating that under the ADA, "major life activities" include "breathing").

Courts in this Circuit have come to the same conclusion on high blood pressure --- that it can count as a disability when it is

---

discrimination against those who suffer from any disability.'") (internal citations omitted) (citing Tynan v. Vicinage 13 of Super. Ct., 351 N.J. Super. 385, 397-98 (App. Div. 2002); Andersen v. Exxon Co., 89 N.J. 483, 495 (1982); Viscik v. Fowler Equip. Co., 173 N.J. 1, 16 (2002); Enriquez v. W. Jersey Health Sys., 342 N.J. Super. 501, 517 (App. Div. 2001), certif. denied, 170 N.J. 211 (2001)). So if something counts as a disability for ADA purposes, it will almost always count as a disability for LAD purposes.

[19] See e.g., Bertig v. Julia Ribaudo Healthcare Grp., LLC, 2016 WL 3683439, at *4 (M.D. Pa. July 12, 2016); McAllister v. Revolutionary Home Health, Inc., 2023 WL 4486198, at *5 (M.D. Pa. June 9, 2023); see also, e.g., Vanderveer v. Fedex Ground Package Sys., Inc., 2017 WL 467631, at *7 (E.D. Pa. Feb. 3, 2017) (noting that plaintiffs are "'not required, at this early pleading stage, to go into particulars about how the life activity affected her alleged disability or detail the nature of her substantial limitations,'" and concluding that "because of the nature of [asthma], there is a reasonable expectation that discovery may reveal [that the plaintiff] is incapable of working on the same level as others") (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009)); Baylis v. Scantek, Inc., 2024 WL 4216458, at *2 (E.D. Pa. Sept. 17, 2024) (similar). But cf., e.g., Johnson v. Ea. Orange VA Med. Ctr., 2023 WL 2770423, at *8 (D.N.J. Apr. 4, 2023) (holding that a plaintiff had not alleged sufficient information to conclude that her asthma and allergies "actually constitute disabilities"). Interpreting the LAD, New Jersey courts have also held that asthma can count as a disability. See, e.g., Svarnas v. AT&T Commc'ns, 326 N.J. Super. 59, 71 (App. Div. 1999); Viscik, 173 N.J. at 17-18; Bravo v. Union Cnty., 2013 WL 2285780, at *11 (D.N.J. May 23, 2013).

invoked at the motion to dismiss stage, even when not paired up with significant added allegations about the impact high blood pressure has on a particular plaintiff's life activities. See, e.g., Rodgers v. Bayonne Bd. of Educ., 2016 WL 5477992, at *2 (D.N.J. Sept. 27, 2016) ("This complaint alleges that Ms. Rodgers has hypertension, that the condition constitutes a disability, and that she was denied a position on that basis. Without the development of a factual record, I cannot find that this condition --- in her case --- does or does not approach the level of severity that would constitute a disability.").[20]

Against this backdrop, a simple allegation that a person has asthma or high blood pressure might be enough to establish an ADA "disability" for motion-to-dismiss purposes.[21]

But no ruling on that is necessary here, because the Plaintiff has gone further.

She has alleged that she received professional diagnoses of asthma and high blood pressure, plus relevant prescriptions from doctors. See, e.g., Complaint at 22, 34-36 (alleging that the Plaintiff's doctor "ratified [a] new medication for high pulse and [a] higher dose of hypertension medication," that the Plaintiff has "submitted medical documentation . . . to school administrators and Human Resources from a treating physician confirming [the] Plaintiff has asthma, multiple allergies, and heightened sensitivity to temperature and environmental changes," and that the Plaintiff was "prescribed . . . treatment to address severe asthma symptoms").

And she has also alleged that conditions in the school exacerbated symptoms associated with these ailments and made it more difficult to engage in day-to-day work, including by

---

[20] See also, e.g., Mercer v. SEPTA, 608 F. App'x 60, 61 (3d Cir. 2015) ("Mercer has diabetes, high blood pressure, and high cholesterol, and is indisputably 'disabled' within the meaning of the ADA."). Interpreting the LAD, New Jersey courts have also suggested that hypertension can count as a disability. See, e.g., Tynan, 351 N.J. Super. at 399.

[21] The counterargument would be that there are many relatively mild cases of each, and that inhalers and medications can make a real difference. Given this, it might be argued that all cases of asthma and all cases of high blood pressure do not have a meaningful impact on "major life activities." 42 U.S.C. § 12102(1).

"create[ing] uncomfortable conditions during classroom setup," and "[p]hysical discomfort . . . during meeting[s]." Id. at 48-49.

The Plaintiff is entitled to every "reasonable inference." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And the burden here is the Defendants'. See Deleva v. City of Newark, 2026 WL 2224829, at *5 n.9 (D.N.J. Aug. 3, 2026) ("At the motion to dismiss stage, the burden is on the movant to show that the plaintiff has failed to state a claim.") (citing Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 772-73 (3d Cir. 2013)).

Given the Plaintiffs' specific factual allegations about her asthma and high blood pressure, it cannot be said as a matter of law that they do not count as disabilities.

**2. Retaliation**

Next, the Plaintiff claims that she was retaliated against in violation of the ADA. See Complaint at 4, 14.

The gist of her claim: that she was fired after she complained about the HVAC, the thermostat, and other "environmental conditions" affecting "temperature regulation and air quality" to school administrators and HR. Id. at 29; see also id. at 24, 26, 30, 33-34, 38, 43, 51, 57.

The Plaintiff also alleges that she made formal requests for accommodation, asking (i) for a portable air conditioner, and/or (ii) to be placed in a classroom that was not connected to the HVAC and thermostat system. See id. at 23, 26; see also id. at 29-30, 34-36, 38.

* * *

Seeking dismissal of the Plaintiff's retaliation claims, the Defendants first argue that the "Plaintiff's [operative pleading] does not clearly state [a] protected activity" --- because the "Plaintiff alleged that she complained about classroom temperatures . . . and not wanting to be in a classroom with a HVAC system because she allegedly suffers from asthma and high blood pressure." iLearn's Brief at 12. And these, the Defendants suggest, are not sufficiently related to the protections of the ADA "to be counted as protected activity." Id.

But "[t]ypical examples of protected activity [include] asking for an accommodation, . . . [o]r complaining about certain workplace conditions." Guttman v. Life Fitness, LLC, 2026 WL 446299, at *2 (D.N.J. Feb. 17, 2026) (citing Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 184-86, 190-91 (3d Cir. 2003)); Iverson v. Kania Real Est. Holdings, LLC, 2022 WL 1291404 at *3 (D.N.J. Apr. 29, 2022) ("Employees engage in protected activity when they complain about conduct that violates the ADA.") (citing Connelly, 809 F.3d at 791-92); Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010) ("Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation.").[22]

And that is what the Plaintiff did here, when she allegedly complained to school officials about "increased indoor heat" and the "risk" it "poses" for "staff with asthma, allergies, and/or high blood pressure." Complaint at 17-18; see also id. at 24, 26, 29-30, 33-34, 38, 43, 51, 57. And when she allegedly asked for accommodations. See id. at 8-9, 18, 26-30.

* * *

The Defendants also have a fallback argument.

The Plaintiff, they contend, has "set[] forth insufficient factual allegations indicating there is any link between her request for accommodation and her termination, other than timing." Passaic and Employee Brief at 9. And "[t]iming in and of itself is insufficient to establish this causal link." Id.

But this is not the law.

The Third Circuit has held that "temporal proximity between the protected activity and the termination is itself sufficient to establish a causal link" in some circumstances. Shellenberger, 318 F.3d at 189 (emphasis added) (cleaned up) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)); see also Steidle v. U.S. Liab. Ins. Co., Inc., 179 F.4th 193, 209 (3d Cir. 2026) ("Unusually suggestive timing alone can 'create an

---

[22] This is roughly how things work under the New Jersey LAD, too. See Registre v. Trane Techs. PLC, 2026 WL 905452, at *5 ("[A] person engages in a 'protected activity' under the NJLAD when that person opposes any practice rendered unlawful under the NJLAD.") (citing Cohen v. BH Media Grp., Inc., 419 F. Supp. 3d 831, 861 (D.N.J. 2019); Young v. Hobart W. Grp., 897 A.2d 1063 (N.J. Super. App. Div. 2005)).

inference of causality and defeat summary judgment.'") (citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)). And even where timing alone may be insufficient to establish causation, causation can be inferred from "timing plus other evidence" gleaned from the broader record. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Here, the Plaintiff has alleged that she was in touch with school administrators and HR personnel about an accommodation in June, August, and "late September" of 2025. See Complaint at 26-30, 33-34, 36 (cleaned up). That she filed reports about the temperature and other air quality issues through at least October 13th. See id. at 51-52. And that she was fired on October 21, 2025. See id. at 55.

The Third Circuit has suggested that a ten-day gap between protected activity[23] and an adverse employment action[24] may constitute close timing that is suggestive of retaliation --- particularly paired with other record evidence supporting that inference. See Shellenberger, 318 F.3d at 189 (holding that a 10-day gap combined with comments from a plaintiff's superior that they "just can't work things out" with her "could reasonably be viewed as proof that [the employer] no longer wanted to be bothered with persistent requests for [what they viewed as] 'baseless' accommodations"); see also Woodson, 109 F.3d at 921 (explaining that a pattern of antagonism, insufficient responses to employee complaints, and sham justifications for adverse actions can all support the requisite inference of causation).

And that is roughly in line with the time gap and other circumstances sketched out here. See also Complaint at 58 (noting that the Plaintiff's termination paperwork indicated that she "was terminated for alleged insubordination related to a failure to attend a meeting, but that the employer did not provide any evidence of misconduct").

Therefore, there is no basis for dismissing the Plaintiff's claims on causation grounds at this time.

---

23 Here, filing complaints and asking for an accommodation.

24 Here, being fired.

D. Constitutional Claims

Now turn to the Plaintiff's constitutional claims --- that the Defendants violated her First and Fourth Amendment rights.[25]

1. First Amendment

As relevant to her First Amendment claim, the Plaintiff presses the same allegations that were discussed above, about the school and the church. See Part II.A.2.

This, the Plaintiff implies, violated the Establishment Clause. See Complaint at 3.

* * *

The Defendants move to dismiss this claim on two grounds.

First, they argue that dismissal is appropriate because the Plaintiff has not pressed allegations that line up with the elements of the test for Establishment Clause violations laid out in Lemon v. Kurtzman, 403 U.S. 602 (1971). See iLearn's Brief at 8-9.

But the Lemon test is no longer good law. See Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 534 (2022) ("[T]his Court long ago abandoned Lemon and its endorsement test offshoot.").

The Plaintiff cannot be faulted for failing to link up the allegations in her complaint to First Amendment law as it used to be. Cf. Deleva, 2026 WL 2224829, at *5 n.9.

* * *

Second, the Defendants contend that they cannot be sued here because the charter school where the Plaintiff worked is "not . . . [a] government institution." iLearn's Brief at 8.

But this proves too little. Even entities that are not government institutions can sometimes be sued for constitutional

[25] The Plaintiff does not expressly invoke 42 U.S.C. § 1983. But because she is pro se, the Court takes her claims as coming under that cause of action. See Wen v. Twp. of Parsippany, 2024 WL 2859459, at *1 (D.N.J. May 31, 2024).

violations. See Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995).

And the question of whether a particular charter school counts as a state actor, covered by the Constitution, is a knotty and contested question that may turn on the particular facts of a given case. See, e.g., Peltier v. Charter Day Sch., 37 F.4th 104, 117-23 (4th Cir. 2022); Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 814-18 (9th Cir. 2010); Logiodice v. Trs. of Main Cent. Inst., 296 F.3d 22, 26-30 (1st Cir. 2022).

Indeed, the Third Circuit has stated that in at least some contexts, charter schools are considered "municipal entit[ies]" that can be sued for constitutional violations. See Fam. C.L. Union v. Dep't of Child. & Fams., 837 F. App'x 864, 869 (3d Cir. 2020); see also id. at 869 n.22 (explaining that "[i]n New Jersey, charter schools are part of the state's public education program," and that they "'operate[] under a charter granted by the [State's] commissioner' and their 'board of trustees [are] deemed to be public agents authorized by the State Board of Education'") (citing N.J. Stat. Ann. § 18A:36A-2; quoting id. § 18A:36A-3).

The Defendants bear the burden here. See Deleva, 2026 WL 2224829, at *5 n.9; Roberts v. City of Newark, 2025 WL 2055263, at *2 (D.N.J. July 22, 2025) (citing Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980)); Hwang v. Pobicki, 2026 WL 1121900, at *2 n.8 (D.N.J. Apr. 24, 2026) (same)). But they do not mention any of the cases cited in the preceding two paragraphs. And they cannot carry their burden without grappling with the governing law and analyzing how it matches up with the Plaintiff's allegations. See Volynsky v. Prudential Ins. Co. of Am., 2025 WL 3062787, at *1-2 (D.N.J. Nov. 3, 2025).

The motion to dismiss the Plaintiff's First Amendment claim is denied.

### 2. Fourth Amendment

Next, the Plaintiff alleges that her Fourth Amendment rights were violated when the following happened, without a heads-up to the Plaintiff, or her permission:

- The school installed a new device to monitor temperature and humidity in her classroom. See Complaint at 24.

- Members of a church group came into her classroom and used her smart board. See id. at 24, 28.
- School administrators went into her accounts on certain education-related platforms. See id. at 46-47.

These allegations are a long way from everyday Fourth Amendment violations.

But the Court follows the parties' lead, as it must, see United States v. Sineneng-Smith, 590 U.S. 371, 375-76 (2020), and addresses only the arguments the Defendants make.

First, the Defendants again contend that the Fourth Amendment does not apply here because the Defendants are not "governmental entit[ies]." iLearn's Brief at 9. But just as with the Plaintiff's First Amendment claim, this argument is not developed enough to carry the Defendants' burden. See Part II.C.1 (explaining).

Second, the Defendants say that the Plaintiff's Fourth Amendment claims fail because there are no allegations suggesting that the Defendants "searched or confiscated her personal items." iLearn's Brief at 9; Passaic and Employee Brief at 11.

But that is not the standard. The Fourth Amendment can be violated even without searching or taking personal items. See United States v. Jones, 565 U.S. 400, 404-05 (2012) (holding that when the government physically trespasses or intrudes upon someone's "person[], houses, papers, [or] effects" for the "purpose of obtaining information," a search has occurred "within the meaning of the Fourth Amendment").

The Defendants' arguments are therefore not persuasive, and their motion to dismiss these claims must be denied.

**E. Other Statutory Claims**

Finally, the Plaintiff presses claims under two additional federal statutes.

First, under Federal Trade Commission Act. See Complaint at 3. But private people, like the Plaintiff, cannot sue under this statute. See Sando Pharm. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 231 (3d Cir. 1990).

And second, under the Family Educational Rights and Privacy Act. But same point. Private people cannot sue under this statute.

See Woodruff v. Hamilton Twp. Pub. Sch., 305 F. App'x 833, 837 (3d Cir. 2009); Gonzaga Univ. v. Doe, 536 U.S. 273, 287 (2002).

The statutory claims discussed here must therefore be dismissed.

## IV. Conclusion

For the above-stated reasons, the motions at ECF 42 and 43 are granted in part and denied in part.

The motion is granted as to the Plaintiff's Title VII, FTC Act, and FERPA claims.

The motion is denied as to the Plaintiff's ADA claims and constitutional claims.

IT IS on this 10th day of August, 2026, **SO ORDERED.**

Michael E. Farbiarz, U.S.D.J.